IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| KENYANA LOWERY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:21CV85 |
| | ) | |
| FORSYTH COUNTY SHERIFF'S, | ) | |
| DEPARTMENT et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER, MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on several motions: Defendants Bobby F. Kimbrough, Jr. ("Sheriff Kimbrough"), Rocky Joyner, B. Warren, C. Warren, L. Ferguson, and C. Whitt's Motion to Dismiss (Docket Entry 29); Defendant WellPath Health Care's ("WellPath") Motion to Dismiss (Docket Entry 33); Defendant B. Williams's Motion to Dismiss (Docket Entry 36); Defendant Judy Lilley's Motion to Dismiss (Docket Entry 39); and Plaintiff Kenyana Lowery's Motion for an Initial Pretrial Order and Final Judgment. (Docket Entry 43.) Plaintiff has filed a response to the motions to dismiss. (*See* Docket Entries 42, 44.) For the reasons stated below, the Court will deny Plaintiff's motion and recommend that Defendants' motions be granted.

## I. BACKGROUND

Plaintiff proceeding *pro se*, initiated this action pursuant to 42 U.S.C. § 1983 in January 2021 alleging constitutional violations against several named Defendants based on events occurring at the Forsyth County Law Enforcement Detention Center ("FLEDC") in Winston

1

Salem, North Carolina, where he was held as a pretrial detainee. (*See* Complaint, Docket Entry 2 at 7, 13.)[1] Defendants named in Plaintiff's Complaint are the Forsyth County Sheriff's Department, the FCLEDC, WellPath, Sheriff Kimbrough, HiG Capital Equity Firm, Chief Deputy Rocky Joyner, Captain B. Warren, Captain C. Warren, Lieutenant L. Ferguson, Lieutenant C. Whitt, Lieutenant R. Joyce, WellPath Director B. Williams, and WellPath Vice President Judy Lilley, each sued in both their individual and official capacities. (*Id.* at 3-6.)

Specifically, Plaintiff alleges that he has been incarcerated at the FCLEDC since January 17, 2019. (*Id.* at 13.) On June 29, 2020, Plaintiff was tested for COVID-19, and on June 30, 2020, that test came back negative. (*Id.*) According to Plaintiff, he was not tested again until December 17, 2020, at which point he tested positive for COVID-19. (*Id.* at 13.) Plaintiff alleges that the FCLEDC has not been testing its staff and the inmates "weekly or monthly" and that his life is in extreme danger due to a disregard for COVID-19 protocols. (*Id.*) As a result of Defendants' actions, Plaintiff has experienced breathing problems and has a bad case of asthma. (*Id.*) Plaintiff alleges that Defendants have violated the Fifth, Eighth and Fourteenth Amendments, and seeks monetary damages from each Defendant. (*Id.* at 4, 28.)[2]

On September 30, 2021, Defendants Sheriff Kimbrough, Rocky Joyner, B. Warren, C. Warren, L. Ferguson, and C. Whitt moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) contending that Plaintiff has failed to state a claim upon which relief can be granted. (Docket Entry 29.) Plaintiff filed his response to Defendants' motion. (Docket

---

[1] Unless otherwise noted, all citations herein refer to the page numbers at the bottom right-hand corner of the documents as they appear in the Court's CM/ECF system.

[2] The Court will address more specific allegations as to each moving Defendant in the Discussion Section.

Entry 42.) Defendants B. Williams and Judy Lilley each filed separate motions to dismiss on October 7, 2021, pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), 12(b)(6), both contending that Plaintiff failed to effectuate proper service of process and that he failed to state a claim upon which relief can be granted. (Docket Entries 36, 39.) WellPath also filed a motion to dismiss on October 7, 2021, pursuant to Rules 12(b)(2), 12(b)(4), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure, contending that Plaintiff failed to effectuate proper service of process, failed to properly name WellPath within the summons, and failed to state a claim upon which relief can be granted. (Docket Entry 33; *see also* Docket Entry 34.) Plaintiff responded to Defendants B. Williams, Judy Lilley, and WellPath's individual motions in one response filed on October 19, 2021. (Docket Entry 44.) Thereafter, Defendants B. Williams, Judy Lilley, and WellPath filed a joint reply. (Docket Entry 45.) On October 13, 2021, Plaintiff also filed a document which appears to be a request for an initial pretrial conference and an order for entry of final judgment pursuant to 28 U.S.C. § 636 (c)(1). (*See* Docket Entry 43.)

## II. DISCUSSION

### A. Defendants Sheriff Kimbrough, Rocky Joyner, B. Warren, C. Warren, L. Ferguson, and C. Whitt's Motion to Dismiss

Defendants Sheriff Kimbrough, Rocky Joyner, B. Warren, C. Warren, L. Ferguson, and C. Whitt move to dismiss pursuant to Rule 12(b)(6). (Docket Entry 29.) In considering a motion to dismiss for "failure to state a claim upon which relief can be granted" under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must determine whether the complaint is legally and factually sufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To survive a motion to dismiss under Rule 12(b)(6),

a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Id.; see also Simmons v. United Mortg. and Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face.") (citations and quotations omitted). The "court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, the standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate the plaintiff has stated a claim that makes it plausible he is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678, and *Twombly*, 550 U.S. at 557).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citation omitted). Further, the Fourth Circuit has made clear that "liability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiffs' rights." *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (internal quotation marks and citation omitted). Thus, a claim under § 1983 "requires factual detail

4

about each defendant's personal involvement." *Moore v. Parsons*, No. 7:20-CV-00157, 2020 WL 4677408, at *2 (W.D. Va. Aug. 12, 2020) (unpublished) (citing *Wilcox*, 877 F.3d at 170).

Here, Plaintiff makes similar factual allegations against Defendants Sheriff Kimbrough, Rocky Joyner, B. Warren, C. Warren, L. Ferguson, and C. Whitt in different sections of his Complaint. In the first section titled, "II. D. Basi[s] for Jurisdiction page 4 of 11," he states that Sheriff Kimbrough,

> [A]cted under color of state/local laws, by allowing FCLEDC shift commanders and staff members to enter FCLEDC and access inmate dorms and cells untested for (COVID-19). Which put inmate's life in danger of worse health condition and possible death, by not allowing mandatory (COVID-19) testing weekly or monthly. To assure the safety of all inmates who aren't and were not infected by (COVID-19).

(Compl. at 9.) As to Defendant Rocky Joyner, Plaintiff alleges that he allowed FCLEDC staff members and administrative officials to enter the jail without COVID-19 testing which "infected" nearly 200 inmates. (*Id.*) Similarly, Plaintiff alleges that Defendants B. Warren, C. Warren, L. Ferguson, and C. Whitt, allowed FCLEDC staff members and administrative officials to enter the jail and access inmate dorms and cells "untested for (COVID-19)," placing inmates in danger of worsening health conditions and again not allowing mandatory COVID-19 testing to protect inmates unaffected by COVID-19. (*See id.* at 10-11.)

In another section of his Complaint titled, "IV Statement of Claim. Page 4 of 11 (personal Involvement) Claim #1 Unlawful professional Judgment/Claim #2 Fail To Enforce," Plaintiff again makes similar factual allegations against these defendants. (*See id.* at 17, 19-23.) He states that Sheriff Kimbrough "[e]nforce[d] policies that allowed FCLEDC staff members and subordinates of the administrative officials to execute ha[r]mfully,

5

dangerous methods, by allowing inmates to only get tested for COVID-19 every 6 months." (*Id.* at 17.) Plaintiff further states that Sheriff Kimbrough displayed unlawful professional judgement by enforcing polices that denied mandatory COVID-19 testing ordered by North Carolina State Governor Roy Cooper, causing an outbreak amongst nearly 200 inmates, and Sheriff Kimbrough fully understood that all inmates were at high risk for COVID-19. (*Id.*) As to Defendants Rocky Joyner, B. Warren, C. Warren, L. Ferguson, and C. Whitt, Plaintiff reiterates his previous contentions, alleging that they again allowed staff and officials to enter inmate dorm areas without being tested, and they too exercised unlawful professional judgment by enforcing a policy of denying mandatory COVID-19 testing that essentially should have occurred weekly or monthly. (*See id.* at 19-23.)

Defendants Sheriff Kimbrough, Rocky Joyner, B. Warren, C. Warren, L. Ferguson, and C. Whitt first contend that Plaintiff has failed to state a claim against them under the Fifth Amendment for reckless endangerment. (Docket Entry 30 at 5-6.) In *Bell v. Wolfish*, 441 U.S. 520, 535 (1979), the Supreme Court held that "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." Accordingly, it stated that "[i]n evaluating the constitutionality or conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, . . . the proper inquiry is whether those conditions or restrictions amount to punishment of the detainee." *Id.*

The *Bell* decision "assessed the claims of pretrial detainees in the federal system and thus applied the Fifth Amendment's Due Process Clause." *Williamson v. Stirling*, 912 F.3d 154, 173 n.15 (4th Cir. 2018). Here, the undersigned notes that the movants are identified as local

6

government officials, *see* Compl. at 4-6 (identifying Defendants Sheriff Kimbrough, Rocky Joyner, B. Warren, C. Warren, L. Ferguson, and C. Whitt as employees of the Forsyth County Sheriff's Office or the FCLEDC). Thus, the principles in *Bell* apply to Plaintiff by way of the Fourteenth Amendment. *See Williamson*, 912 F.3d at 173 n.15; *see also Gowen v. Enochs*, No. 7:20-CV-00247, 2021 WL 960702, at *3 n.3 (W.D. Va. Mar. 15, 2021) (unpublished) ("The Fourteenth Amendment applies to due process claims of pretrial detainees in state custody.").

The Fourth Circuit has assessed both substantive and procedural aspects of due process claims raised by pretrial detainees. *See Williamson*, 912 F.3d at 174-75. "Typically, a substantive due process claim pursued by a pretrial detainee challenges the general conditions of confinement or the treatment of all detainees in a specific facility." *Id.* at 174. To the contrary, a procedural due process claim generally challenges restrictions imposed to an individual. *See id.* at 174-75.

Plaintiff here alleges that he was placed in "extreme danger" as a result of Defendants' failure to adequately test inmates, and their policy of permitting untested staff members to enter inmates' dorm areas. (*See* Compl. at 13, 17-23.) Plaintiff's claim, therefore, is rooted in substantive due process principals. To properly state such claim, Plaintiff's Complaint must allege that a challenged condition was either "(1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective." *Williamson*, 912 F.3d at 178 (internal quotations and citation omitted).

Here, Plaintiff makes no specific allegations that the purported COVID-19 policies and procedures implemented were imposed with the expressed intent to punish inmates. (*See generally* Compl.) As to the second prong, the Fourth Circuit has held that "a pretrial detainee

7

makes out a due process violation if he shows deliberate indifference to serious medical needs . . . because no legitimate nonpunitive goal is served by a denial or unreasonable delay in providing medical treatment where the need for such treatment is apparent." *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir. 1988) (internal quotations and citations omitted). This principal implicates Plaintiff's claims under the Eighth and Fourteenth Amendments, and overlaps Defendants' argument that such claims also fail. (*See* Docket Entry 30 at 7-15.)

At the outset the Court notes that Plaintiff's deliberate indifference claim is actually brought under the Fourteenth Amendment as he is a pretrial detainee, rather than the Eighth Amendment; however, they are analyzed the same. (*See* Compl. at 7; *Turner v. Kight*, 121 F. App'x 9, 13 (4th Cir. 2005) ("While a pre-trial detainee's rights with respect to claims of deliberate indifference [fall under] the due process clause of the Fourteenth Amendment, rather than the Eighth Amendment, with respect to such claims, a pretrial detainee's due process rights are co-extensive with a convicted prisoner's Eighth Amendment rights.") (citation omitted).)

To constitute deliberate indifference a Plaintiff must make two showings:

> First, the evidence must show that the official in question subjectively recognized a substantial risk of harm. It is not enough that the [official] *should have* recognized it; [he] actually must have perceived the risk. Second, the evidence must show that the official in question subjectively recognized that his actions were inappropriate in light of that risk. As with the subjective awareness element, it is not enough that the official *should have* recognized that his actions were inappropriate; the official actually *must have* recognized that his actions were insufficient.

*Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (internal citations and quotation marks omitted) (emphasis in original). The deliberate indifference standard is more than mere

8

negligence, requiring actual knowledge of the individual defendant's own recklessness. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994).

Here, Plaintiff's allegations against this group of Defendants are mostly repetitive and conclusory and fail to state how each prison official individually violated Plaintiff's constitutional rights. Plaintiff generally states that Governor Cooper ordered mandatory COVID-19 testing but has not alleged specific facts regarding such order or policy. (*See* Compl.) More importantly, Plaintiff has not alleged that each defendant individually both subjectively recognized a substantial risk of harm related to such policy, and that each defendant subjectively recognized that his or her actions were inappropriate in light of that risk. *See Anders v. Russell*, No. 7:21CV00030, 2022 WL 726923, at *4 (W.D. Va. Mar. 10, 2022) (unpublished) (Plaintiff "fails to state facts concerning how each of the individual named jail officials or medical officials interacted with him in a manner that deprived him of constitutionally protected rights."); *Newell v. Roy Cooper Governor's COVID-19 Task Force*, No. 5:20-CT-03378-M, 2022 WL 450983, at *4 (E.D.N.C. Feb. 14, 2022) (unpublished) ("[P]laintiff's claims about his COVID-19 infection and protocols at [the prison facility] fail to plausibly allege that defendants actually knew of, but disregarded, a substantial risk of serious harm to plaintiff or acted with the requisite culpable state of mind."). More particularly, the Complaint fails to allege specific facts regarding each Defendants' knowledge of the COVID-19 testing protocols, and their conscious decision to ignore such protocols, which led to Plaintiff's positive test and his other injuries. This warrants dismissal of Plaintiff's deliberate indifference and substantive due process claims against said Defendants.

Instead of specific allegations of personal involvement against Defendants Sheriff Kimbrough, Rocky Joyner, B. Warren, C. Warren, L. Ferguson, and C. Whit, Plaintiff's Complaint repeatedly alleges in conclusory fashion that Defendants allowed "staff members" and "administrative officials" to enter dorm areas untested, and that each failed to "enforce" COVID-19 testing protocols. (*See e.g.*, Compl. at 9-11, 17, 19-23.) To the extent Plaintiff is attempting to sue Defendants in a supervisory capacity, such claims are also subject to dismissal because the doctrine of respondeat superior is generally not applicable to § 1983 suits. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). However, a supervisor may be liable for the actions of a subordinate if:

> (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;
> (2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices;" and
> (3) there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Additionally, "[a]plaintiff may establish deliberate indifference by demonstrating a supervisor's continued inaction in the face of documented widespread abuses[;]" however, a "plaintiff assumes a heavy burden of proof" on this issue because "a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his responsibilities." *See id.* (internal citation and quotations omitted).

Here, Plaintiff fails to allege sufficient facts to that Defendants had actual or constructive knowledge of their subordinates engaging in pervasive or widespread conduct

10

that caused Plaintiff's COVID-19 positive test. For example, there are no allegations that Defendants knew of multiple subordinates or administrative staff who entered Plaintiff's cell with COVID-19, on various occasions, and that these Defendants did nothing to correct this conduct. The Complaint also fails to allege sufficient facts to support a claim that Defendants knew that subordinates ignored COVID-19 testing protocols, and then did nothing despite being aware of their subordinate's conduct. Thus, to the extent alleged, Plaintiff claims under the theory of supervisory liability against these Defendants should be dismissed.

Defendants also argue that to the extent Plaintiff attempts to assert municipal liability under *Monell*, that too fails. (Docket Entry 30 at 12-15.) The undersigned agrees. County or municipal liability may be established under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694. Here, the vague and conclusory allegations in Plaintiff's Complaint fall short of alleging a plausible *Monell* claim. Plaintiff vaguely alleges that Defendants "enforce[d] policies" that allowed staff to execute inadequate testing protocols. (*See* Compl. at 17; *see also Woodie v. McFadden*, No. 3:21-CV-00068-MR, 2022 WL 1213618, at *3 (W.D.N.C. Apr. 25, 2022) (unpublished) (Plaintiff's "vague allusions to a 'pattern of willful disregard for the health and safety of prisoners,' and the failure to adhere to the [county jail's standard operating procedures] regarding the handling of COVID-19, are insufficient.").) Even if such policy of purported inadequate testing protocols existed, Plaintiff has failed to allege sufficient facts that would establish that the failure to routinely test inmates and staff at the FCLEDC was the proximate cause of his actual COVID-19 diagnosis. Therefore, his Complaint is insufficient to proceed on this claim.

11

Lastly, the undersigned notes that while Plaintiff alleges that Defendants Sheriff Kimbrough, Rocky Joyner, B. Warren, C. Warren, L. Ferguson, and C. Whitt exercised "unlawful professional judgment," *see* Compl. at 17, 19-23, such standard is inapplicable here. That is because the deliberate indifference standard applies to pretrial detainees "while claims asserted by individuals involuntarily committed to psychiatric institutions are evaluated under the professional-judgment standard." *Cook v. Mildred Mitchell Bateman Hosp.*, No. 3:15-CV-10569, 2017 WL 1505610, at *4 (S.D.W. Va. Mar. 31, 2017) (unpublished) (citations and internal quotations omitted); *see also Youngberg v. Romeo*, 457 U.S. 307 (1982); *Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 209 n.6 (4th Cir. 2017) (citing *Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001) ("deliberate-indifference standard applies to medical-care claims involving pre-trial detainees"). As Plaintiff alleges that the events in the Complaint occurred while he was a pretrial detainee, *see* Compl. at 7, it is inappropriate to apply the professional judgment standard here.[3]

### B. Defendant WellPath's Motion to Dismiss

Plaintiff's Complaint alleges "unlawful professional judgment" and "fail[ure] to enforce" claims against WellPath. (*See* Compl. at 8, 16.) In support of its "unlawful professional judgment," Plaintiff alleges that WellPath failed to follow the mandatory testing ordered by Governor Cooper and instead provided testing every six months. (*Id.* at 16.) The Complaint further states that WellPath allowed its medical staff "to enforce the policies that denied mandatory (COVID-19) testing" and "fail[ed] to enforce: urgent and immediate

---

[3] The undersigned has previously applied the deliberate indifference standard in assessing the allegations against said Defendants.

12

healthcare" by not performing weekly or monthly testing. (*Id.*) Defendant WellPath asserts numerous arguments to support dismissal of Plaintiff's Complaint against it. (*See* Docket Entry 34.) The undersigned will discuss a few below that warrant dismissal of said Defendant.

WellPath argues that Plaintiff did not effectuate proper service of process on it. (Docket Entry 34 at 4-7.) Plaintiff's summons improperly lists FCLEDC's address instead of WellPath's address. (Docket Entry 5-2.) While the United States Marshals Service served the summons and complaint on Valerie Davis, a WellPath administrative assistant, (Docket Entry 18), WellPath argues that Davis is not identified as an officer, director, or managing agent of WellPath and therefore that service was improper. (Docket Entry 34 at 6.)

This Court recently addressed this issue in a separate matter involving Plaintiff and WellPath:

> A civil action is commenced by the filing of a complaint and the issuance of a summons by the clerk of court. Fed. R. Civ. P. 4(b). The summons commands a defendant to appear and must be served with the complaint on each defendant. Fed. R. Civ. P. 4(a) & (c). Service must be made in accordance with the rules. *See, e.g.,* Fed. R. Civ. P. 4(e) & (j); N.C. R. Civ. P. 4(j). Further, Federal Rule of Civil Procedure 4(m) provides that "[i]f a defendant is not served [with the complaint and summons] within 90 days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time."
>
> The summons must be served on each defendant, along with a copy of the complaint, "by any person who is at least 18 years old and not a party" to the action. Fed. R. Civ. P. 4(c)(1)-(2). There are two ways to effectuate service on a corporation, such as WellPath: (1) in accordance with state law; or (2) "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1). The applicable state law -- the North Carolina Rules

13

of Civil Procedure -- permits service on a corporation by (1) delivering a copy of the summons and complaint to an "officer, director, or managing agent of the corporation" or leaving a copy with a person apparently in charge of such person's office; (2) delivering a copy of the summons and complaint to an agent authorized to accept service or as authorized by law to be served in accordance with any statute; (3) by mailing a copy of the summons and complaint "registered or certified mail, return receipt requested" to an officer, director, or authorized agent; or (4) depositing a summons and complaint with an authorized delivery service pursuant to 26 U.S.C. § 7502(f)(2) addressed to the officer, director, or agent, and obtaining a delivery receipt. N.C. R. Civ. P. 4(j)(6).

When a defendant raises a defense pursuant to Federal Rule of Civil Procedure 12(b)(5), the plaintiff bears the burden of establishing compliance. *Ballard v. PNC Fin. Servs. Grp., Inc.*, 620 F. Supp. 2d 733, 735 (S.D. W. Va. 2009). And while Lowery is proceeding *pro se* and is entitled to a certain liberal construction of his complaint, *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), the court need not ignore clear defects, *Bustos v. Chamberlain*, No. 3:09-1760-HMH-JRM, 2009 WL 2782238, at *2 (D.S.C. Aug. 27, 2009). Even *pro se* litigants must follow the proper procedural rules of the court, and it is not the court's role to become an advocate for the *pro se* litigant. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

*Lowery v. Forsyth Cnty. Sheriff's Dep't*, No. 1:20-CV-888, 2022 WL 939651, at *2 (M.D.N.C. Mar. 29, 2022) (unpublished).

Here, Plaintiff has failed to carry his burden of establishing compliance with service. While Plaintiff has filed a response to WellPath's motion, he has not responded at all to WellPath's contention that service was improper. (*See* Docket Entry 44.) Ultimately, Plaintiff did not list an address for WellPath upon which service should be effectuated; rather, he provided FCLEDC's address. (Docket Entry 5-2.) That is where the summons and Complaint was served on Davis, who WellPath contends has not been identified as an officer, director, or managing agent of WellPath, or someone otherwise authorized to accept service

14

on WellPath's behalf. (Docket Entry 34 at 6.) In light of such and because Plaintiff "has offered no response contesting WellPath's representation," *Lowery*, 2022 WL 939651, at *2, WellPath's motion to dismiss pursuant to Rule 12(b)(5) should be granted and the Complaint against WellPath should be dismissed without prejudice.

Setting aside the service defects, the Complaint should be dismissed against WellPath for failure to state a claim upon which relief may be granted. First, as previously stated, the "professional-judgment" standard is inapplicable here. *Heyer*, 849 F.3d at 209 n.6. Further, "[t]o the extent that [Plaintiff's] claim is for a separate cause of action for engaging in some form of 'unlawful professional judgment,' his claim [should be] dismissed as no such cause of action exists at common law." *Lowery*, 2022 WL 939651, at *6 (citation omitted). Indeed, "allegations of 'unlawful professional judgement' sound in negligence, not deliberate indifference." *Richardson v. Wellpath Health Care*, No. 1:20CV777, 2021 WL 1430698, at *1 n.1 (M.D.N.C. Apr. 15, 2021) (unpublished).

Moreover, any claim against WellPath for deliberate indifference fails to meet the pleading requirements. Private medical providers who provide contractual services for a state or provide medical care to inmates are subject to deliberate indifference standard claims. *See West v. Atkins*, 487 U.S. 42, 54 (1998) (explaining that a private entity which contracts with the state to provide medical services acts "under color of state law"). However, "a private corporation is liable under § 1983 *only* when an official policy or custom of the corporation causes the alleged deprivation of federal rights." *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999) (citation omitted) (emphasis in original). "Outside of formal written regulations or formal rulings by policy makers, a custom may arise if a practice is so 'persistent

and widespread' and 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" *Anders*, 2022 WL 726923, at *6 (citation omitted).

Here, Plaintiff fails to allege nothing more than conclusory allegations regarding WellPath's failure to enforce policies surrounding COVID-19 testing. Even if there was weekly or monthly mandatory testing ordered by Governor Cooper, Plaintiff has not alleged how this related to a policy or custom of Wellpath that directly caused Plaintiff to test positive. At this stage, Plaintiff must allege facts to plausibly support "a direct causal link between a [corporate] policy or custom and the alleged constitutional deprivation." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). Having not done so, Plaintiff's deliberate indifference claim against WellPath should be dismissed. *See McAlllister v. Wellpath Health Care*, No. 1:19CV1034, 2020 WL 2813386, at *4 (M.D.N.C. May 29, 2020) ("[T]he Complaint fails to set out, name, or describe [the defendant's] policies, much less explain how they led to the alleged violations. Conclusory allegations of deficient policies or customs do not suffice to state a viable claim for relief."), *report and recommendation adopted sub nom. McAllister v. Wellpath Health Care*, No. 1:19-CV-1034, 2020 WL 3976971 (M.D.N.C. July 14, 2020), *appeal dismissed*, 827 F. App'x 355 (4th Cir. 2020).

### B. Defendants B. Williams and Judy Lilley's Motions to Dismiss

Defendants B. Williams and Judy Lilley also move to dismiss, in pertinent part, based upon improper service of process. (*See* Docket Entry 37 at 5-7; Docket Entry 40 at 4-7.) The summonses for both Defendants list FCLEDC's address. (*See* Docket Entries 5-10; 5-11.) The U.S. Marshal's Process Receipt and Returns show that Davis was served with the documents on August 27, 2021. (*See* Docket Entries 21, 22.) Defendants B. Williams and

Judy Lilley both filed an affidavit from Davis stating that neither Defendant authorized Davis to be their agent, or to accept or sign for service of process on their behalf. (*See* Affidavit of Valarie Davis ¶¶ 5-6, Docket Entries 37-1, 40-1.) Said Defendants therefore contend that dismissal is warranted.

Service upon an individual within a judicial district in the United States must comply with Rule 4(e) which states:

> Unless federal law provides otherwise, an individual . . . may be served in a judicial district of the United States by:
>
> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
> (A) delivering a copy of the summons and of the complaint to the individual personally;
>
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e). N.C. Gen. Stat. § 1A-1, Rule 4(j)(1) sets out the manner in which service upon a natural person may be made in the state of North Carolina. The Fourth Circuit has stated that "[a]bsent waiver or consent, a failure to obtain proper service on the defendant deprives the court of personal jurisdiction over the defendant." *Koehler v. Dodwell*, 152 F.3d 304, 306 (4th Cir. 1998) (citation omitted).

Here, Defendants B. Williams and Judy Lilley have submitted the affidavit of Davis who stated that she was not authorized to be agents for said Defendants, nor authorized to

Case 1:21-cv-00085-TDS-JLW   Document 46   Filed 08/16/22   Page 17 of 20

accept or sign for service of process on their behalf. (*See* Affidavit of Valarie Davis ¶¶ 5-6, Docket Entries 37-1, 40-1.) Again, Plaintiff has offered no response contesting Defendants' representations. Thus, Defendants B. Williams and Judy Lilley's motions should be granted, and any individual capacity claims against them in the Complaint should be dismissed without prejudice.[4] *Stanley v. Gaston Cnty. Dep't of Health & Hum. Servs.*, No. 315CV00551FDWDCK, 2016 WL 5867431, at *2 (W.D.N.C. Oct. 6, 2016) (unpublished) ("Service of process cannot be effected on Defendants . . . in their individual capacity by serving at their place of employment individuals not authorized to accept service."); *Mack v. Fox*, No. 1:07CV760, 2008 WL 4832995, at *4 (M.D.N.C. Nov. 4, 2008) (unpublished) ("Plaintiff failed to properly serve the moving Defendants in . . . their . . . individual capacities, and, for this reason alone, the claims against the moving Defendants should be dismissed."), *report and recommendation adopted*, No. 1:07CV760, 2008 WL 7674789 (M.D.N.C. Dec. 10, 2008) (unpublished).

### C. Plaintiff's Motion for an Initial Pretrial Order and Final Judgment

Plaintiff has filed a motion seeking an initial pretrial order by conference pursuant to Federal Rule of Civil Procedure 16(b)(1) and (c), and an order for entry of final judgment pursuant to 28 U.S.C. § 636(c)(1). (*See* Docket Entry 43.) Rule 16(b)(1) states that "the district judge—or a magistrate judge when authorized by local rule--must issue a scheduling order."

---

[4] Any claims against Defendants B. Williams and Judy Lilley in their official capacity would be duplicative of the deliberate indifference claim against WellPath and should also be dismissed. *See Riddick v. Watson*, 503 F. Supp. 3d 399, 414 (E.D. Va. 2020) ("Although courts differ in their treatment of official capacity claims against individuals employed by private companies that contract with jails . . . to provide inmate medical services, most treat such claims as claims against the private employer rather than against some government office or agency for which the privately-employed individuals provide services."); *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent") (citation and internal quotations omitted).

Fed. R. Civ. P. 16(b)(1). However, such rule further provides that this mandate does not apply "in categories of actions exempted by local rule[.]" *Id.* The Local Civil Rules of this district provide that there will be a pretrial order except in "[c]ases brought by *pro se* plaintiffs or in which all defendants are appearing *pro se.*" M.D.N.C. LR 16.1(a)(6). As Plaintiff is proceeding *pro se,* "his motion seeking an initial pretrial order is improper because his case falls under an exemption to Federal Rule of Civil Procedure 16." *Lowery,* 2022 WL 939651, at *7. As such, Plaintiff's request will be denied.

Further, Plaintiff's request for final judgment under 28 U.S.C. § 636(c)(1) is improper. § 636 sets forth jurisdiction of a United States Magistrate Judge and, in pertinent part, provides that "[u]pon the *consent* of the parties, a . . . United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court or courts he serves." 28 U.S.C. § 636(c)(1) (emphasis added). A notice was filed in this case regarding the parties' rights to consent to the exercise of civil jurisdiction by a Magistrate Judge. (Docket Entry 6.) It notes that if *all* parties consent, a referral to the Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1) may take place. (*See id.*)

Here, there is no order referring this matter to the undersigned pursuant to 28 U.S.C. § 636(c)(1) for all proceedings including entry of judgment, nor does the docket otherwise reflect that this Court has treated this case as one involving consent to the jurisdiction of a Magistrate Judge. Thus, Plaintiff's request for final judgment pursuant to 28 U.S.C. § 636(c)(1) is improper and will be denied.

## III. CONCLUSION

For the reasons stated herein, **IT IS HEREBY RECOMMENDED** that Defendants Bobby F. Kimbrough, Jr., Rocky Joyner, B. Warren, C. Warren, L. Ferguson, and C. Whitt's Motion to Dismiss (Docket Entry 29) be **GRANTED** and that Plaintiff's Complaint be dismissed with prejudice against said defendants for failure to state a claim upon which relief may be granted.

**IT IS FURTHER RECOMMENDED** that Defendant WellPath Health Care's Motion to Dismiss (Docket Entry 33) be **GRANTED** and Plaintiff's Complaint be dismissed without prejudice against said defendant for insufficient service of process, or alternatively, dismissed with prejudice against said defendants for failure to state a claim upon which relief may be granted.

**IT IS FURTHER RECOMMENDED** that Defendant B. Williams's Motion to Dismiss (Docket Entry 36) and Defendant Judy Lilley's Motion to Dismiss (Docket Entry 39) be **GRANTED** and Plaintiff's Complaint be dismissed without prejudice against said defendants in their individual capacities for insufficient service of process, and dismissed in their officials capacities as duplicative claims against WellPath Health Care.

**IT IS HEREBY ORDERED** that Plaintiff's Motion for an Initial Pretrial Order and Final Judgment (Docket Entry 43) is **DENIED**.

Joe L. Webster
United States Magistrate Judge

August 16, 2022
Durham, North Carolina